UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ANYA JUAN RISCO,

       Plaintiff,

   v.

JOHN M. McHUGH, Secretary of the Army,

       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10 Civ. 6314 (ER)


# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for Defendant
86 Chambers Street, 3d Floor
New York, NY  10007
Telephone: (212) 637-2718
Facsimile: (212) 637-2786
david.bober@usdoj.gov


DAVID BOBER
Assistant United States Attorney
– Of Counsel –

Defendant John M. McHugh, Secretary of the Army (the "Army"), respectfully submits this reply memorandum in further support of the Army's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## ARGUMENT

**A.  Risco Has Come Forward with No Evidence that the Army's Non-Discriminatory Reasons for Terminating Her Employment Were a Pretext for Discrimination**

Once the defendant proffers a legitimate, nondiscriminatory reason for the challenged action, "the presumption of discrimination arising with the establishment of the prima facie case drops from the picture." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). The burden then shifts back to the plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Id.* This requires the plaintiff to produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not discrimination was the real reason" for the challenged action. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (internal quotation marks and alteration omitted) (requiring that a plaintiff produce something more "than conclusory allegations"). Moreover, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original).

Here, the Army has come forward with abundant evidence of legitimate, non-discriminatory reasons for terminating Risco's employment during her probationary period; namely, the litany of erratic behavior she displayed within the first six to eight months of her employment. In response, Risco concedes or does not dispute that she engaged in much of the

erratic behavior described in the Army's motion papers. For example, she does not dispute that in March 2009 she sent an email to her co-workers warning them about "Proffessionalism [sic] and Etiquette in the Workplace," recounting how she had "observed many departments . . . diminish their professionalism, productivity and positive work environment due to malicious gossip" (Plaintiff's Response to Defendant's Rule 56.1 Statement (Docket No. 21) ("Risco 56.1 Statement") ¶ 12); that she made comments in the presence of her co-workers to the effect that "where I come from," her co-worker "would be disciplined by her mother, father, brother, sister, she would probably be slapped" (Plaintiff's Affidavit in Opposition to Motion for Summary Judgment (Docket No. 20) ("Risco Affidavit") ¶ 2); that she sent emails to her supervisors stating that she was "overwhelmed" with her assignments despite her workload being a fraction of that of others who worked with her (*id.* ¶¶ 18-19); that she sent a series of emails in which she announced her resignation and then retracted it (Risco 56.1 Statement ¶¶ 16-18); that she accused her supervisor of inappropriately monitoring her email account (*id.* ¶ 19); and that she repeatedly referred to her co-workers and supervisors by pet names and was asked to refrain from doing so (*id.* ¶ 8).

     Rather than dispute any of these facts, Risco responds in conclusory fashion that "she did not behave erratically" and argues that many of her actions were misinterpreted by her supervisors. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket No. 19) ("Risco Br.") at 6. Thus, while she admits to calling her co-workers and supervisors by pet names and being asked to stop (Risco 56.1 Statement ¶ 8), she argues that her supervisors misinterpreted her intent, and that she intended the pet names to be "used as a term of respect." *Id.* Similarly, she admits sending an email to all of her co-workers

warning them about "malicious gossip" (Risco 56.1 Statement ¶ 12), but again argues that her intent was misinterpreted, in that she simply meant to make a statement of general applicability – *i.e.*, that gossip in the workplace is malicious – and not to accuse any of her coworkers of gossiping. And with regard to the statement regarding how her family would have disciplined her co-worker, Risco again does not deny the statement, but argues that she meant that the co-worker "would" be slapped, not that she "should" be slapped. *Id.* ¶ 8.

But these types of semantic disagreements are not enough to create triable issues of material fact that would preclude summary judgment. Whether Risco's statements or actions were misinterpreted is besides the point; the Army has come forward with evidence that it had legitimate, non-discriminatory reasons for Risco's termination, and there is no evidence to suggest that Risco's actions were purposefully misinterpreted to serve as a pretext for unlawful discrimination. As one court has explained, "[w]hile plaintiff argues that her behavior during the incidents cited by defendants was appropriate and justified, a plaintiff's factual disagreement with the validity of an employer's non-discriminatory reason for an adverse employment decision does not, by itself, create a triable issue of fact." *Fleming v. MaxMara USA*, 644 F. Supp. 2d 247, 266 (E.D.N.Y. 2009); *see also Martinez v. Conn. State Library*, __ F. Supp. 2d __, 2011 WL 4396704, at *16 (D. Conn. Sept. 21, 2011) ("the fact that [the plaintiff] disagreed with Defendant's conclusion that her behavior during the bathroom incident was inappropriate and violated the Workplace Violence Policy is alone insufficient to create a triable issue of fact"); *Hargett v. New York City Transit Authority*, 640 F. Supp. 2d 450, 476 (S.D.N.Y. 2009) (explaining that it "does not matter" whether defendant was mistaken about whether plaintiff sent inappropriate emails; "all that matters is whether [defendant] had a good faith belief in the non-

3

discriminatory legitimate business reason it offers").

Apart from stating in conclusory fashion that her behavior was not erratic, Risco also attempts to point to other "evidence" of discrimination that is insufficient to create a material issue of fact. For example, Risco argues repeatedly that the fact that she was "not . . . provided with basic performance standards for her position" is evidence of racial and disability discrimination. Risco Br. at 7.[1] But this fact is not material to her claims of intentional discrimination; even assuming it were true, it would not support a finding that wholly unrelated disciplinary actions taken months later in response to her erratic behavior were a pretext to cover intentional discrimination. *See Vasquez v. Claire's Accessories, Inc.*, 392 F. Supp. 2d 342, 352 (D. Conn. 2005) (explaining that party opposing summary judgment must point to evidence that is "material and of a substantial nature"). Indeed, Risco conceded during the EEO proceedings that the paperwork containing her performance standards should have been given to her during her first thirty days, *see* FFC 28:9-23 (Bober Declaration Exhibit B), but she also admitted that she had no complaints about her treatment by her supervisors prior to March 2009. *See* Risco Depo. 40:6-9. (Q: "Do you have any complaints of the way you were treated prior to going to the EEO in March of 2009? A. No, sir."). It is difficult to see, then, how the failure to provide her with performance paperwork in the fall of 2008 could provide sufficient evidence of illegal racial and disability discrimination that is not even alleged to have begun until months later.

Risco also argues that a reasonable jury could find discrimination on the basis of disability because Byrd allegedly made one comment to the effect that Risco's failure to do her

---

[1] *See also* Risco Br. at 8 (arguing "there is no dispute but that Byrd did not timely [or ever] provide plaintiff with her performance standards"); *id.* at 2 (noting that "Byrd had failed to provide plaintiff her performance standards or mid-year performance review").

work was "a mental thing," thereby suggesting that Byrd believed that Risco was mentally impaired. Risco Br. at 9. But as explained in the Army's opening papers, a single stray remark such as this is insufficient to create an inference of discrimination. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Army Opening Br.") at 13; *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998) ("Stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination."). And even if that one remark were enough to create an inference that Byrd regarded Risco as suffering from a mental disability, Risco is incorrect that the discipline imposed upon her would be prohibited by the ADA. "It is well recognized that a distinction must be made between discrimination based upon a disability, which is prohibited by the ADA, and discrimination based upon misconduct by a disabled person, which is not prohibited by the ADA." *Pierce v. Highland-Falls Montgomery Cent. Sch. Dist.*, No. 08 Civ. 1948, 2011 WL 4526520, at *11 (S.D.N.Y. Sept. 28, 2011). Here, the record is clear that Byrd's decision to terminate Risco was due to her erratic behavior, not any perception he may have had regarding a mental disability.

Finally, Risco attempts to create evidence of discrimination by arguing that she was treated differently from her co-workers, none of whom "was accused of being violent at work," "denied timely performance standards," or "subjected to false write-ups." Risco Br. at 6. This argument fails for a number of reasons. First, it is Risco's burden to demonstrate that she was "similarly situated in all material respects" to the individuals with whom she seeks to compare herself. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). Risco has not done that here, as the record demonstrates that none of Risco's co-workers was, like Risco, in his or her probationary period, and none was an intern. *See id.* at 40 (explaining that plaintiff must show

5

that plaintiff and comparator "were subject to the same performance evaluation and discipline standards"). And while it is true that Risco need not show that any comparator is identically situated, she is required, at the very least, to demonstrate a "reasonably close resemblance of the facts and circumstances" of her case and a comparator's case. *Id.* But Risco can only point to negatives – for example, that no other employee was accused of workplace violence, and that no other employee was not given performance standards. Risco Br. at 6. But the Army is not required to prove a negative; rather, Risco must show that a similarly situated co-worker engaged in behavior similar to Risco's erratic behavior – *e.g.*, sent accusatory emails officewide, or stated that co-workers should (or would) be slapped, or called co-workers pet names – and was not disciplined. But Risco has pointed to no admissible evidence that this occurred.

Put simply, to counter the Army's evidence that her termination was for legitimate, non-discriminatory reasons, Risco must do more than state in conclusory fashion that her behavior was not erratic and that the Army misinterpreted her true intentions. She must come forward with "sufficient evidence to support a rational finding" that the Army's stated reasons were "false, and that more likely than not discrimination was the real reason" for her termination. *Van Zant*, 80 F.3d at 714. She has not done so. Accordingly, the Army is entitled to summary judgment on Risco's discrimination claims.

**B.    Risco Cannot Proceed on Her Retaliation Claim Because the Record Establishes that the Process to Terminate Her Employment Was Initiated Before She Engaged in Protected Activity**

Risco argues that her retaliation claim should be allowed to proceed because she suffered adverse employment actions "within six weeks of complaining to her employer's EEO officer on March 27, 2009." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for

Summary Judgment (Docket No. 19) at 11; *see also id.* (stating that "on March 27, she plainly complained to the agency EEO officer of disability related discrimination"). Risco's brief cites nothing in support of the assertion that she complained to the EEO as early as March 27, and the record indicates exactly the opposite. On June 11, 2009, the Army's EEO counselor provided Risco with a memorandum – which Risco signed and dated – that stated that "[y]our initial contact with an EEO official was on May 15, 2009, and my initial interview with you was on May 27, 2009." Bober Declaration Exhibit P. And by May 15, Risco had already been placed on administrative leave, and her supervisor had already recommended to the Garrison Commander that she be terminated. *See* Army Opening Br. at 21. Given that the process that led to Risco's termination was already underway before she engaged in protected activity, Risco cannot prevail on her claim that she was terminated in response to protected activity. *See, e.g.*, *Ianetta v. Putnam Investments*, 183 F. Supp. 2d 415, 426-27 (D. Mass. 2002) ("It is settled law that if an employer has set a course of action regarding employee discipline, it need not change that course of action because a Title VII claim has been made against it."); *see also Clark County School Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

Moreover, even if Risco had engaged in protected activity by March 27 – a fact that, as explained above, is wholly unsupported in Risco's motion papers and undermined by the EEO record – there would still be insufficient evidence to support a retaliation claim. The only evidence that Risco cites in support of her retaliation claim is the temporal proximity between

her supposed protected activity on March 27 and the alleged adverse employment actions. *See* Risco Br. at 12 (arguing that jury could find retaliation because adverse employment actions were "close in time" to protected activity). But while temporal proximity alone, in some circumstances, may be enough to establish a *prima facie* case of retaliation, *see, e.g.*, *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009), it is not sufficient to establish a pretext once the defendant has come forward with legitimate non-discriminatory reasons. *See, e.g.*, *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."); *Martinez*, 2011 WL 4396704, at *18 ("temporal proximity alone cannot prove pretext"). As Risco has no evidence that her termination was retaliatory apart from the supposed temporal proximity, the Army is entitled to summary judgment on Risco's retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court should grant the Army's motion for summary judgment.

Dated: New York, New York
February 1, 2012

PREET BHARARA
United States Attorney for the
Southern District of New York

By: /s/ David Bober
DAVID BOBER
Assistant United States Attorney
United States Attorney's Office
86 Chambers Street, 3rd Floor
New York, NY 10007
(212) 637-2718
david.bober@usdoj.gov

OF COUNSEL:
Annette Perry, Esq.
U.S. Army Litigation Division
9275 Gunston Road
Fort Belvoir, Virginia 22060
(703) 693-1036